UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ISMAEL LUIS ORTIZ,

      Plaintiff,

v.                                                  Case No. 4:20cv7-WS-HTC

WARDEN D S. COLLINS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth and Fourteenth Amendment rights.  ECF Doc. 15.  The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  Upon screening the complaint under 28 U.S.C. §§ 1915 and 1915A, the Court finds the facts as presented fail to support a viable claim for relief under § 1983 and, because Plaintiff has already been given a chance to amend his complaint, recommends that this case be dismissed for failure to state a claim.

## I.    THE AMENDED COMPLAINT

Plaintiff Ismael Luis Ortiz, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC") currently incarcerated at Holmes Correctional Institution.  He filed this action, initially, against thirteen (13) defendants, all of whom are or were employed by Madison Correctional Institution ("Madison CI"), arising out of events that occurred at Madison CI.  ECF Doc. 1.

After screening the complaint, the Court issued an order finding that the complaint was deficient for various reasons and giving Plaintiff an opportunity to file an amended complaint or a notice of voluntary dismissal.  ECF Doc. 8.  After being granted two (2) extensions of time, Ortiz filed an amended complaint on August 31, 2020, naming the following five (5) defendants: Warden Collins, Assistant Warden of Programs Bearden, Assistant Warden of Operations Cox, Confinement Sergeant Stalnaker, and Officer Weatherspoon (who was in charge of disciplinary reports at Madison CI).  ECF Doc. 15.  The following facts are taken from the amended complaint and, for purposes of this report and recommendation only, are accepted as true.

In September of 2016, Plaintiff arrived at Madison CI and was housed in three dormitories, including F-1 and F-2 dormitories, between September 2016 and September 2018, and was housed in the F-2 dormitories on September 10, 2018.  *Id.*

at 7.  Plaintiff alleges Madison CI administrative and security departments were well aware that inmates in E and F dormitories were at "a substantial risk of serious extortion and harm" at the hands of inmates who belonged to a Security Threat Group ("STG") and that the risk of inmate attacks in those dormitories was "longstanding, pervasive, well documented and expressly noted".  *Id.* at 7.

On September 10, 2018, while in the F-2 dorm at Madison CI, Ortiz submitted a DC6-112C form (a witness statement form) to the dorm sergeant stating that he feared for his safety from other inmates and sought to be placed in administrative confinement pending review for protective management.  *Id.* at 8.  He stated on the form that the video from his dorm on that date would validate his allegations. Although Plaintiff provides no other details or facts about that incident, Plaintiff alleges elsewhere in the amended complaint that he sustained physical injuries from a STG member that day.  *Id.* at 8 ¶s 9, 10, 12.

Plaintiff submitted another DC6-112C form re-alleging the same fear for his safety on September 11, 2018 through September 14, 2018.  Plaintiff does not identify to whom he submitted the form or how many forms he submitted.  Plaintiff also fails to identify his injuries or state whether any required treatment.  Moreover, in paragraph 14, Plaintiff implies that he suffered no actual injury by arguing, "Because of the importan[ce] of protecting inmates from this kind of conduct, the Supreme Court made clear that 'ACTUAL INJURY NEED NOT TAKE PLACE'

to satisfy this requirement.  It is enough if Plaintiff can show that there is a 'SUBSTANTIAL RISK OF SERIOUS HARM.'"  *Id.* at 9 (capitalization in original).

Based on the allegations in Plaintiff's original complaint and amended complaint, Plaintiff was placed in administrative confinement on September 10, 2018, while his application for protective management was considered.  *See Id.* 1 at ¶¶ 4, 40, ECF Doc. 1; ECF Doc. 15 at 10, ¶ 21.  While in administrative confinement, Plaintiff was informed on October 19, 2018 that the Institutional Classification Team had denied his request for protective management.  ECF Doc. 115 at 9.  Plaintiff appealed the protective management decision on the same day.  *Id.*

On November 11, 2018, Plaintiff submitted a request to Defendant Bearden for a phone call to "inform his family members that Plaintiff was unable to receive visitors . . . before the next scheduled visiting day as specified by Defendants' then applicable rules." ECF Doc. 15 at 10, ¶ 19.  On December 18, 2018, Bearden refused to provide Plaintiff the opportunity to notify three (3) of his approved visitors that he could not have visitors while in confinement.  *Id.* at ¶ 20.

On November 13, while he was still in administrative confinement, Ortiz was approached by Defendant Stalnaker who asked him if he wished to stay there or return to general population.  ECF Doc. 15 at 10.  Ortiz "informed Defendant (Sgt. Stalnaker) that he (Plaintiff) did not want to go back to Open Population."  *Id.*

On November 26, 2018, Plaintiff received a disciplinary report ("DR") for disobeying a verbal or written order from Sgt. Stalnaker, which Plaintiff contends was "for Plaintiff's seeking to remain in AC for fear of his safety from other inmates." *Id.* On December 11, 2018, Plaintiff wrote a DCI-303 alleging that Stalnaker gave false testimony and submitted a false statement and that Defendant Weatherspoon failed to note Plaintiff's requested witnesses and evidence and also refused to provide Plaintiff with witness and evidence forms. *Id.* at 10-11.

Plaintiff contends that audio of the conversation between him and Stalnaker will show that Stalnaker was "offering Plaintiff an 'ultimatum' of either wanting to stay or to be placed in open population and not 'ordering Plaintiff to' pack his property and submit to restraints.'" *Id.* at 11.

On December 18, 2018, Plaintiff received a response from Bearden stating that "Plaintiff has been approved for a negative transfer." ECF Doc. 15 at 11. On that same date, Plaintiff also received a response to his appeal of the DR, stating that the request had been reviewed and evaluated, that Stalnaker said he ordered Plaintiff to gather his property and submit to restrains and that Plaintiff "looked directly in [Stalnaker's] eyes and stated, 'No I am not going anywhere.'" *Id.* at 12. Additionally, the response stated, "Plaintiff called the camera and audio on Y-2 [] as evidence on his DC 6-151 Form and Defendants stat[ed] that the review of the camera did not substantive Plaintiff's innocence or refute the other reports." *Id.*

Nonetheless, Plaintiff claims that he received a copy of a Gmail sent to him from his mother dated December 19, 2018, where the Warden provided evidence supporting Plaintiff's allegation that Defendants had deviated from their own rules requiring Plaintiff to be present during their transfer decision. *Id.* at 12.

Plaintiff alleges that on December 28, 2018, Defendants provided Plaintiff with "evidence of false testimony" by stating that inmate "Certalich, Coby" would not provide a witness statement. ECF Doc. 15 at 11. On January 2, 2019, Plaintiff appealed the Part B Response by refuting the validity of the DC 6-151 form and Inmate Coby's witness statement, claiming that video evidence will show that Weatherspoon refused to provide Coby with a DC 6-151 form. *Id.* at 13. The appeal was denied. *Id.*

Ortiz was eventually transferred to another institution "by way of a retaliatory transfer causing Plaintiff to lose contact with his family via contact visits . . . . believed (by Plaintiff) to be Defendants attempt to silence Plaintiff of exposing Defendants or their unmanageability of [Madison CI]." ECF Doc. 15 at 15.

Ortiz's amended complaint, like his original complaint, is convoluted and disjointed. It is unclear which claims are lodged against which defendants as Plaintiff, in many instances, refer to "Defendant(s)" as a collective unit. Thus, the undersigned will address all claims as if set forth against all Defendants. Reading Plaintiff's amended complaint liberally, it appears Plaintiff is seeking to bring the

following claims (1) violation of his Eighth Amendment rights to humane conditions of confinement by placing non-STG-member Ortiz in F-2 dorm; (2) violation of his right to due process under the Fourteenth Amendment by "failing to abide by their own applicable rules, by refusing to investigate requested witnesses, evidence ....., and by falsifying information; and (3) violation of his First Amendment by transferring him in retaliation for his complaints.

As relief, Ortiz seeks a declaratory judgment that his rights were violated, compensatory and punitive damages of $350,000 each against each defendant, reinstatement of his "Good Adjustment Transfer," costs of suit, and any additional relief that is proper and equitable. He also seeks a jury trial.

## II.   LEGAL STANDARDS

Because Plaintiff is proceeding *in forma pauperis* and is a prisoner seeking relief against governmental employees, the Court must dismiss his amended complaint if it determines it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The Court must read Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).

### III.    DISCUSSION

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of a federal law or Constitutional provision; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (per curiam).   For the reasons set forth below, Ortiz's amended complaint fails to state a claim under § 1983 because he has failed to allege facts sufficient to show that the named defendants committed a violation of constitutional or federal law.

### A.    Eighth Amendment Failure-to-Protect Claim

As an initial matter, Plaintiff has no constitutional right to a particular classification status. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).  In other words, prisoners have no protectable property or liberty interest in being placed in protective management or some other classification.  *See Whitley v Hunt*, 158 F.3d 882, 889-90 (5th Cir. 1998).  Additionally, decisions relating to the classification of prisoners are better left with prison officials and courts are hesitant to interfere with the administrative processes of a prison.  *See e.g., Brown v. Anglin*, 2016 WL 6803133, at *2 (N.D. Fla. June 27, 2016), *report and recommendation adopted sub nom. Brown v. Holland*, 2016 WL 6780319 (N.D. Fla. Nov. 15, 2016) ("granting the

injunction would require the federal courts to interfere in the administration of the jail and take over the management or treatment of a single inmate").

However, the Eighth Amendment does impose a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations and quotations omitted). This includes "a duty to protect prisoners from violence at the hands of other prisoners." *Robbins v. Fogel*, No. 5:18CV175/TKW/EMT, 2020 WL 536023, at *5 (N.D. Fla. Jan. 7, 2020), *report and recommendation adopted*, No. 5:18CV175-TKW-EMT, 2020 WL 535695 (N.D. Fla. Feb. 3, 2020) (quoting *Farmer*, 511 U.S. at 833).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Carter v. Galloway*, 352 F.3d 1346, 1349 (internal quotation marks omitted) (alterations adopted); *Farmer*, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). Also, to state a claim Plaintiff must allege that the defendant's failure to protect was the legal cause of an injury to the Plaintiff. *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

1.    <u>Defendants Were Not Aware of a Substantial Risk of Serious Harm</u>

"When examining the first element—a substantial risk of serious harm—the court uses an objective standard." *Caldwell*, 748 F.3d at 1099 (citation omitted). The alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Further, there must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations omitted).

Also, the official must actually know of the substantial risk of serious harm; mere negligence is insufficient. "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis omitted) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted). Additionally, the defendant's response, even if inadequate, must amount to more than gross negligence. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013); *see also, Hughes*, 894 F.2d at 1537 ("[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983").

Plaintiff's allegations, at best, are that Defendants should have known of the risk of injury to him based on the STG activity in the F-2 dorm. This allegation, however, even if true, is the type of "generalized awareness of risk" that the Eleventh Circuit has found as insufficient to satisfy the subjective awareness requirement. *See Carter*, 352 F.3d at 1350; *see also, Reid v. Polk*, 2018 WL 1426428 at *9 (M.D. Fla. Mar. 22, 2018), *appeal dismissed*, No. 18-12168-D, 2019 WL 2261242 (11th Cir. Feb. 27, 2019) ("statements of generalized fear of the 'more than 140' convicted murderers and gang members housed in B dormitory who could potentially harm him because they knew about his child sexual battery conviction and had referred to him as a homo and baby raper (sic) … suggest no more than the type of generalized risk found insufficient in *Carter*.").

Instead, a plaintiff must allege that prison officials were aware of specific threats, visibly violent tendencies, mental health issues, or a violent and assaultive prison history of the perpetrator in order to impute subjective awareness of a substantial risk of harm. *See, e.g., Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016) (officials were subjectively aware of substantial risk of harm by placing plaintiff with the cellmate, a convicted murderer, as he was known to be schizophrenic and prone to impulsive, dangerous behavior, had assaulted his previous cellmate, and the cell they shared could not be directly observed).

Plaintiff, however, makes no such allegations in his amended complaint. The only specific threat of harm that can be gleaned from Plaintiff's complaint is a vague reference to an incident occurring on September 10. Plaintiff, however, does not provide any details about the incident or allege why the incident posed a specific threat of future harm to him. Moreover, although Plaintiff alleges he informed his dorm sergeant of the September 10 incident, he does not allege that any of the named Defendants were aware of the incident. Plaintiff failed to correct these deficiencies when filing his amended complaint, despite being directed to do so in the Court's February 27, 2020 amend order.

2.  Defendants Responded Reasonably to His Concerns

More importantly, even if Plaintiff had alleged that Defendants were made aware of a specific threat against him, Plaintiff's claim of deliberate indifference nonetheless fails because Defendants immediately placed him in administrative confinement. A prison official may avoid Eighth Amendment liability for failure to protect an inmate by showing he "responded reasonably" to a known substantial danger, "even if the harm ultimately was not averted." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 618 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 844) (internal quotations omitted). In other words, Plaintiff fails to allege that the officials "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury v.*

*Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted).

Plaintiff admits in his allegations that he was immediately placed in administrative confinement on September 10, 2018, in response to the submission of the DC6-112C form.  ECF Doc. 15 at 7-8, ¶ 8.  Indeed, in his original complaint, Plaintiff makes this point very clear when he alleges that he wrote a request to Bearden stating that he had "been back here [meaning administrative confinement] since 9-10-18".  ECF Doc. 1 at ¶ 40.

Thus, whether Defendants' response was objectively reasonable involves no questions of fact and needs no additional discovery.  *See Stokes v. Owens*, 2011 WL 5826051, at *4 (N.D. Fla. Oct. 13, 2011) (recommending dismissal of Eighth Amendment claim on motion to dismiss based on finding that Defendant's response was objectively reasonable); *see also, Rickmon v. Williams*, 2019 WL 4635588, at *5 (S.D. Ga. Aug. 26, 2019) (dismissing complaint at screening based on determination that Defendants' response of running away from assailant as opposed to focusing on protecting Plaintiff was objectively reasonable).

Defendants' placement of Plaintiff in administrative confinement was an objectively reasonable response.  *Compare Ogles v. Trimble,* No. 5:15-CV-00054 (MTT), 2016 WL 491848 (M.D. Ga. Jan. 5, 2016), *report and recommendation adopted*, No. 5:15-CV-54 (MTT), 2016 WL 498255 (M.D. Ga. Feb. 8, 2016)

(dismissing complaint for failure to protect, finding that lockdown, rather than protect management, was an objectively reasonable response to the inmate's complained-of threats). In fact, the Eleventh Circuit has found even a lesser response to be sufficient. *Doe v. George Dept. of Corr.*, 248 F. App'x 67, 71 (11th Cir. 2007) (finding that "the immediate commencement of an investigatory process into unsubstantiated and contested accusations" was an objectively reasonable response even "without additional affirmative measures to ensure safety"). Also, the response was consistent with the policy of the FDOC to place inmates in temporary administrative confinement pending review of the inmate's request for protection from other inmates. *See* Florida Administrative Code Rule 33-602.220(3)(c). It was also the exact response that Plaintiff alleges. *See* ECF doc. 15 at 8 ("Plaintiff submitted the DC6-112C form, because Plaintiff did not have any other reasonable alternative open to him, but to seek to be placed in Administrative Confinement pending review for protective management form other inmates").

Thus, Plaintiff simply has not alleged that Defendants' response was so deficient as to constitute "an unnecessary and wanton infliction of pain", as required to state a claim under the Eighth Amendment for failure to protect. *Estelle v. Gamble,* 429 U.S. 97, 105–06 (internal quotation marks omitted); *see Taylor v. Adams,* 221 F.3d 1254, 1257 (11th Cir. 2000).

3.    <u>Plaintiff Does Not Sufficiently Allege Any Injuries Caused by Defendants' Conduct</u>

Also, as Ortiz was warned in the Court's amend order, a plaintiff bringing an Eighth Amendment failure to protect claim must show a causal link between each defendant's failure to act reasonably and the plaintiff's injury. *Marbury*, 936 F.3d at 1233 (citation omitted).  With respect to causation, section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks omitted).    The constitutional deprivation must, in turn, be "a legal cause of [the plaintiff's] injuries." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982).

Despite this warning, Plaintiff's amended complaint continues to lack allegations about any physical injury he suffered.  Plaintiff does not provide any factual allegations supporting his conclusory claim in ¶¶ 12 & 37 that "Plaintiff substained [sic] physical injury by a STG" and "substained [sic] physical injuries in the hands of other inmates."  In fact, as set forth above, in ¶ 14, he appears to imply that he was never physically harmed by arguing that no actual injury is required.

While being placed in the general population *could have* resulted in an injury to Plaintiff, the mere possibility of injury does not suffice to state a claim in this case.  Although Plaintiff correctly notes that the *Farmer* opinion held that "[i]t would, indeed, be odd to deny **an injunction** to inmates who plainly proved an

unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them," he is not seeking injunctive relief in this case. *See Farmer*, 511 U.S. at 845–46 (emphasis added). Instead, he is seeking compensatory and punitive damages totaling $700,000 against each defendant.[1] ECF Doc. 15 at 30.

Thus, Ortiz's case is different than *Farmer*, where the Plaintiff sought "injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer*, 511 U.S. at 845. Indeed, even if he wanted to, Ortiz cannot seek injunctive relief in this case because he is no longer at Madison CI. "Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted).[2]

## B.    Fourteenth Amendment Claims

As stated above, Plaintiff seeks to assert claims under the Fourteenth Amendment for Defendants' failure to follow FDOC rules and as related to his

---

[1] As an additional matter, lack of a physical injury also precludes Plaintiff from recovering compensatory or punitive damages. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The statute does not define "physical injury," but the Eleventh Circuit has clarified that, "in order to satisfy section 1997e(e), the physical injury must be more than *de minimis*, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir.1999), *opinion reinstated in relevant part*, 216 F.3d 970, 972 (11th Cir. 2000).

[2] Plaintiff's claim for declaratory relief is moot for the same reasons. *See McKinnon v. Talladega Cty.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding inmate's transfer to a different jail mooted claim for declaratory and injunctive relief ).

disciplinary report. For the reasons set forth below, these claims should be dismissed.

### 1.    Based on Failure to Follow FDOC Rules and Regulations

Ortiz claims that his Fourteenth Amendment due process rights were violated after he was put in administrative confinement when Bearden refused to allow him to call three approved visitors to let them know he was not able to be visited, ECF Doc. 15 at ¶¶ 19-20 & 30. Also, he claims that his rights were violated when a decision to transfer him was made outside his presence. *Id.* at ¶ 29. Both of these counts fail to state a claim, however, because they are entirely based on FDOC rules and regulations which do not create an interest protected by the Fourteenth Amendment.

"Violations of departmental rules or regulations do not, standing alone, infringe on an inmate's federal constitutional rights." *Newton v. Wheeler*, No. 5:15CV211/MP/CJK, 2015 WL 6746511, at *2 (N.D. Fla. Oct. 2, 2015), *report and recommendation adopted*, No. 5:15-CV-00211-MP-CJK, 2015 WL 6756134 (N.D. Fla. Nov. 4, 2015) (citing *Sandin v. Conner,* 515 U.S. 472, 481–82, (1995) (prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres,* 440 U.S. 741, 751–52, (1979) (mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples,* 375 F.3d

1269, 1279 n.7 (11th Cir.2004) (noting that "procedural requirements set out in [an administrative] regulations are not themselves constitutional mandates.")).

With regard to the denied phone call, Plaintiff points to no case or statute that recognizes a right to said phone call other than it was "specified by Defendants' then applicable rules."  ECF Doc. 15 at ¶ 20.  As to his claim that he should have been present at the hearing about his transfer, he again fails to cite any case or statute that recognizes a right to such presence except that "Defendants deviated/departed from their own then applicable rules requiring Defendants (ICT) to have Plaintiff present during their decision to transfer Plaintiff to another institution."  *Id.* at ¶ 29. Therefore, Plaintiff relies entirely on mere violations of FDOC rules and regulations as the basis for these claims.  As such, he fails to state claims of constitutional violations based on them.

2.   Disciplinary Report

Plaintiff claims his due process rights were violated in the handling of his disciplinary report.  However, as an initial matter, Plaintiff has alleged no facts showing that he was entitled to a due process hearing.  The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Plaintiff does not allege the disciplinary report resulted in a deprivation of property or life.  With regard to liberty, there are two

circumstances in which a prisoner can be deprived of his liberty such that due process is required. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995).

The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 492–93 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (finding liberty interest in deprivation of yard time). "Said another way, convicted inmates have *no right to a due process hearing* before being punished for disciplinary infractions unless the punishment is demonstrably harsher than the ordinary conditions of prison life." *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1347 (11th Cir. 2016) (emphasis added).

Neither of those circumstances exists based on the facts alleged. Plaintiff has alleged no facts suggesting that his disciplinary punishment amounted to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 486. In fact, Plaintiff does not state what his

punishment was for the disciplinary finding of guilt. At best, Plaintiff appears to be suggesting that he received a "negative transfer" (i.e., a transfer to a facility farther away from his family) as retaliation for (not punishment from) the disciplinary report. ECF Doc. 15 at ¶ 75.

Even assuming the transfer was actually the punishment for the disciplinary report, such a transfer does not give rise to a liberty interest. *Ross v. Sconyers*, No. 2:13-CV-764-WKW, 2016 WL 3763230, at *4 (M.D. Ala. June 16, 2016) ("[t]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement"), *report and recommendation adopted*, No. 2:13-CV-764-WKW, 2016 WL 3753478 (M.D. Ala. July 13, 2016) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.")); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (holding that prisoner has no constitutional right to be confined in a particular institution). Consequently, due process did not attach to the disciplinary proceeding,

and Plaintiff's Fourteenth Amendment allegations relating to the proceeding fail to state a claim.

Additionally, "[t]he minimum requirements of due process for prisoners facing disciplinary action . . . are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999). Plaintiff was directed in the amend order that to state a claim for violation of due process as to the disciplinary reports, Plaintiff must allege facts from which the Court can reasonably infer that Plaintiff's due process has been violated. While Plaintiff's amended complaint contains additional allegations – they are not facts, but merely conclusory statements of wrongdoing.

Plaintiff alleges in conclusory fashion that Defendants (collectively) refused to investigate requested witnesses and evidence and submitted false documentation. ECF Doc. 15 at 15. Plaintiff does not identify those witnesses or evidence. Plaintiff also does not identify which Defendants engaged in the alleged wrongful conduct, other than that false statements were submitted by Stalnaker. Moreover, as the Court warned Plaintiff, his denial of due process claim is belied by his representations that appeal of the DR was denied because the review of the camera evidence did not substantiate Plaintiff's innocence or refute the officer report; the witness statement

revealed that he did not make a statement; and that the DR Team made their findings based on information contained in the statement of facts, information gathered during the investigation and witness statements.

Also, as Plaintiff was advised in the amend order, Plaintiff's bald allegations that Defendants made false statements (or submitted false evidence to support the disciplinary report) do not support a due process violation (even if he was entitled to due process). *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (holding that false or unfounded charges do not deny due process as long as prison officials go through the required procedural motions).

### C.    First Amendment Retaliation Claim Based on Alleged Retaliatory Transfer

To state a claim for retaliation by prison officials, an inmate must establish three elements: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the ... retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosely*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)). "[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).

Reading Plaintiff's complaint liberally, it appears that Plaintiff is alleging a First Amendment claim of retaliation based on receiving a "negative transfer." "Transfer of prisoner from one facility to another can constitute deprivation of prisoner's First Amendment rights, regardless of whether prisoner has protected interest under state law in remaining in first facility." *Bridges v. Russell*, 757 F.2d 1155, 1156 (11th Cir. 1985). However, Plaintiff's claim fails here. First, Plaintiff's amended complaint is devoid of any factual allegation showing that any of the named Defendants made the decision to transfer him. While he does state that Bearden advised him a transfer was approved, he does not allege that Bearden (or any of the other Defendants) made the decision to transfer him.

Second, other than Plaintiff's conclusory allegations that he was transferred because of his complaints, Plaintiff has alleged no facts showing that his complaints were the "motivating factor" behind his transfer such as is necessary to establish a casual relationship between the retaliatory action and the protected speech. Conclusory allegations, however, are insufficient to survive a motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Cunningham v. School Board of Lake County*, 2016 WL 1755612, at *6 (M.D. Fla. May 3, 2016) ("While this allegation is a virtual parroting of the legal standard, it provides no

factual basis from which the Court can plausibly infer that the [Rule 8] standard . . . has been met.").

Third, while whether the alleged adverse conduct actually deterred Plaintiff from exercising his right to free speech is not a dispositive issue, it is a factor the Court considers in determining whether the second element of Plaintiff's retaliation claim is met. Here, the undersigned notes that even after Plaintiff was advised of the transfer approval in December, Plaintiff continued to appeal his DR and complain about the safety at the prison. *See Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) (reasoning that the plaintiff "continued to file grievances against [the defendant], even after [the alleged retaliation], which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech"); *Moss v. Gradia,* 2010 WL 337603 (N.D. Fla. Jan. 21, 2010) (no adverse effect from the alleged retaliation where the plaintiff filed six (6) grievances against the defendant after the alleged retaliation). Moreover, given Plaintiff's complaints about the safety at Madison CI, it is not an unreasonable or necessarily "adverse" action to transfer Plaintiff to a different prison.

Finally, while not entirely clear, to the extent Plaintiff claims that the retaliatory conduct was not the transfer, but the filing of the DR, such a claim has been rejected by Eleventh Circuit in cases where the inmates were found guilty of the DRs. *See O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).

## IV.    CONCLUSION

Additionally, because Ortiz cannot assert any set of facts that would state a claim in this case, the undersigned recommends that dismissal, rather than a second chance to amend, is appropriate as an amendment would be futile. *Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("district courts need not permit amendment where it would be futile to do so"). Moreover, a *sua sponte* dismissal is appropriate here because Plaintiff was already given a chance to amend and this Report and Recommendation constitutes fair notice to Plaintiff that his suit is due to be dismissed and gives Plaintiff the opportunity to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also Glover v. Williams*, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

Accordingly, it is respectfully RECOMMENDED that:

1.    That Plaintiff's claims be DISMISSED without prejudice under 28 U.S.C. §§ 1915A(b)(1) and1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim on which relief may be granted.

2.    That the clerk enter judgment accordingly and close this case.

At Pensacola, Florida, this 25th day of September, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.